# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Salam Shaker Zora,

                    Petitioner,        Case No. 15-cv-11550

v.                               Judith E. Levy
                               United States District Judge

Thomas Winn,

                               Mag. Judge R. Steven Whalen
                  Respondent.

_____/

# OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING THE MOTION FOR AN EVIDENTIARY HEARING [9], AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Salam Zora, confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through his attorneys Daniel E. Harold, Mayer Morganroth, and Stuart Friedman. (Dkt. 1.) He has also filed a motion for an evidentiary hearing. (Dkt. 9.) Petitioner challenges his conviction for second-degree murder, MICH. COMP. LAWS § 750.317, and carrying or possessing a gun when committing a felony, MICH. COMP. LAWS § 750.227b.

For the reasons set forth below, the petition for a writ of habeas corpus is denied. Further, the motion for an evidentiary hearing is denied, and a certificate of appealability will not issue.

## I.    Background

Petitioner was charged with first-degree murder and possessing a firearm during a felony after killing his brother-in-law, Najem Matti. On September 25, 2009, a jury found Petitioner guilty of second degree murder and felony-firearm.

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's convictions arise from the January 23, 2009, shooting death of his brother-in-law. The victim and his wife (defendant's sister) previously lived in defendant's home. After they moved out, defendant discovered that approximately $250,000 was missing from a hideaway at his residence. Defendant suspected that the victim stole the money. On January 20, 2009, defendant confronted the victim about the money and, according to defendant, the victim agreed to go to their church later that week to swear on a Bible to his innocence. Three days later, defendant went to the victim's residence unannounced to again discuss the missing money. Defendant was armed with a gun and was accompanied by his two brothers. Defendant ultimately shot the victim five times. Three of the gunshots were to the back

2

> of the victim's body. There was no evidence of a struggle in
> the residence. Defendant presented a claim of self-defense
> through himself and his two brothers. The defense theory at
> trial was that the victim charged toward defendant while
> shouting an Arabic war death cry and while holding a
> butcher knife in his raised right hand and a two-pronged
> barbecue fork in his left hand.

*People v. Zora*, No. 296508, 2011 WL 2623384, at *1 (Mich. Ct. App.
July 5, 2011). Petitioner's conviction was affirmed on appeal. *Id.*, *leave
denied* 491 Mich. 852 (2012).

Petitioner then filed a post-conviction motion for relief from
judgment, which the trial court denied. *People v. Zora*, No. 2009-2137-
FC (Macomb Cty. Cir. Ct. Oct. 28, 2013). The Michigan appellate courts
denied Petitioner leave to appeal. *People v. Zora*, No. 321508 (Mich. Ct.
App. June 11, 2014); *People v. Zora*, No. 150070, 497 Mich. 1011 (2015).

Petitioner now seeks a writ of habeas corpus. Petitioner first
argues he was denied his Sixth Amendment right to effective assistance
of counsel because his trial counsel was unprepared, failed to interview
and call several material witnesses, failed to investigate and present
exculpatory evidence, and stipulated to the admission of false evidence.
(Dkt. 1-1 at 19–37.) Next, Petitioner argues he was denied due process
as guaranteed by the Fourteenth Amendment because of prosecutorial

3

misconduct. The prosecutor at trial allegedly presented false evidence, concealed evidence, and submitted a false affidavit to the trial court regarding what the prosecutor did and did not argue at trial. (*Id*. at 37–43.) Third, Petitioner claims he was denied his right to a trial by a fair and impartial jury as guaranteed by the Sixth and Fourteenth Amendments because the jury was racially and ethnically biased against him. (*Id*. at 43–44.) Finally, Petitioner claims his trial was "fundamentally unfair by virtue of the cumulative constitutional errors." (*Id*. at 44–45.)

## II.   Legal Standard

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court decides a case differently than the Supreme Court has on a set of "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when a state court applies "clearly established federal law" in an "objectively unreasonable" manner. *Id.* at 410. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state

5

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

To obtain habeas relief, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. A habeas petitioner must be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision reasonable. *See Woods v. Etherton*, ___U.S.___, 136 S. Ct. 1149, 1152 (2016).

## III.   Analysis

Petitioner has raised a number of issues in his petition, and respondent argues that at least some of his claims are procedurally defaulted. Petitioner has also asked for an evidentiary hearing. Each of these issues is discussed in detail below.

## A.     Procedural Default

Respondent argues that many of Petitioner's claims are procedurally defaulted either because he failed to preserve them during trial or because he raised the claims for the first time in his motion for post-conviction review and failed to show cause or prejudice, as required by Mich. Ct. R. 6.508(D), that would excuse him for failing to raise the claims on direct appeal.

The Supreme Court has held there is no rule "that the procedural-bar issue must invariably be resolved first" or before the merits of the potentially defaulted claims. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Id.* Thus, a federal court may "proceed directly to the merits of [the] claim" when "the question of procedural default presents a complicated question of [state] law" or "is unnecessary to [the] disposition of the case." *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003).

In this case, many of the allegedly procedurally-defaulted claims are similar or related to the non-defaulted claims. As set forth below, consideration of the non-defaulted claims will dispose of the allegedly defaulted claims and all of the claims lack merit, making the procedural default issue "unnecessary to [the] disposition of the case." *Hudson*, 351 F.3d at 216. Accordingly, the Court will adjudicate the merits of all of Petitioner's claims.

## B.   Ineffective Assistance of Counsel

Petitioner first alleges he was denied the effective assistance of trial counsel for numerous reasons, as set forth below.

To show that he was denied the effective assistance of counsel, a defendant must satisfy a two-prong test. First, the petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

8

circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Second, the petitioner must demonstrate prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112).

And on habeas review of state court determinations, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable–a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, pursuant to 28 U.S.C. § 2254(d)(1), "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner, *id.*, and "a state court must be granted a deference and latitude that are not in operation when the

9

case involves review under the *Strickland* standard itself." *Harrington*,

562 U.S. at 101.

Because of this doubly deferential standard, the Supreme Court

has indicated that:

> Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).  When § 2254(d) applies,
> the question is not whether counsel's actions were
> reasonable.  The question is whether there is any reasonable
> argument that counsel satisfied Strickland's deferential
> standard.

*Harrington*, 562 U.S. at 105.    Thus, a reviewing court must

"affirmatively entertain the range of possible 'reasons [counsel] may

have had for proceeding'" as he did. *Cullen v. Pinholster*, 563 U.S. 170,

196 (2011).

### i.   Petitioner's Claim That Trial Counsel Was Unprepared

Petitioner first argues that his trial counsel, Carl Marlinga, was

not prepared for trial.    Petitioner has submitted Mr. Marlinga's

testimony from the post-trial evidentiary hearing – known as a *Ginther*

hearing – that counsel felt tired and ill-prepared for trial because he

had recently finished several other trials and was engaged in other

10

matters.   Mr. Marlinga also submitted a post-trial affidavit in which he claimed he was ineffective at trial.  (Dkt. 1-15.)

*Strickland* "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110.  Because a court's inquiry asks whether representation fell below an *objective* standard of reasonableness, a defense attorney's subjective belief that his or her representation was inadequate or ineffective "plays no role" in determining whether a habeas petitioner was denied the effective assistance of counsel.  *Dugas v. Coplan*, 428 F.3d 317, 328 n.10 (1st Cir. 2005).   Indeed, "some excellent lawyers would stipulate to their own ineffectiveness if it might help win a client's release." *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004).   Thus, Mr. Marlinga's post-trial testimony and affidavit are not sufficient to show that the state court unreasonably applied *Strickland* in finding Mr. Marlinga was not ineffective. *People v. Zora*, 2011 WL 2623384, at *5.   Accordingly, Petitioner is not entitled to habeas relief on the ground that counsel has claimed he was ill-prepared for trial.

11

### ii.    Petitioner's Claim Counsel Was Ineffective For Failing to Interview or Call Certain Individuals as Witnesses

Petitioner claims that trial counsel was ineffective for failing to interview or call a number of individuals. Petitioner claims these individuals would have supported his self-defense claim; his peaceful character; and other facts related to his defense.

#### *Individuals Supporting Petitioner's Self-Defense Claim*

Petitioner claims that counsel was ineffective because he failed to interview or call to testify five individuals whose testimony would have allegedly supported his self-defense claim: the victim's then-four year-old son, Austin Matti; the victim's wife and Petitioner's sister, Manal Petros; Petitioner's other sister, Hana Battris; Petitioner's cousin, Shaban Kejbou; and Petitioner's employee, James Curry.

Petitioner previously raised this claim on appeal with respect to these individuals, except Mr. Curry. The Michigan Court of Appeals dismissed the claim, stating Petitioner had not submitted any documentation at the evidentiary hearing – and also did not call these individuals to testify at that hearing – to prove that these individuals would have testified in support of his defense. *People v. Zora*, 2011 WL

12

2623384, at *6.  Thus, counsel was not ineffective because Petitioner had not demonstrated he was denied a "substantial defense" as nothing showed the testimony may have altered the outcome of the trial.  *Id*.

The record shows the state court reasonably found counsel was not ineffective.  First, nothing in the police interview of Austin Matti indicates he saw his father threaten or attack Petitioner with a knife.  (*See* Dkt. 1-12.)  Thus, Austin's understanding of the events was only that a fight occurred and then his father was shot.  And given Petitioner's failure to call Austin at the post-trial evidentiary hearing and to submit any additional documentation indicating he would have testified to facts supporting Petitioner, the state court reasonably found that counsel was not ineffective for failing to call Austin as a witness.  *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("[Petitioner] has not introduced affidavits or any other evidence establishing what [potential witnesses] would have said. . . .  In the absence of any evidence showing that they would have offered specific favorable testimony, [Petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence.").

13

Second, Petitioner's sister, Manal Petros, has repeatedly attested to the fact that she was in the garage at the time of the confrontation between Petitioner and her husband.  (Dkt. 1-5.)  Thus, any testimony she could have provided "would not help exonerate [Petitioner]." *Pillette v. Berghuis*, 408 F. App'x 873, 885–86 (6th Cir. 2010) (petitioner argued individual should have been called as a witness to support self-defense claim in assault with intent to murder case).  Consequently, the decision not to call her as a witness is not obviously unreasonable trial strategy, and it was reasonable for the state court to reject Petitioner's claim.  *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000) ("Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.").

Third, Petitioner claims that trial counsel was ineffective for failing to call his other sister, Hana Battris, to testify that the victim attacked her with a knife fourteen years earlier.  At trial, counsel filed a motion to admit Ms. Battris' testimony, but the trial court denied the motion, in part because there was no indication that Petitioner was aware of this specific instance of violence.  (Tr. of Arg., 8–13 (Sept. 15,

14

2009); Tr. of Arg., 4–6 (Sept. 17, 2009)).   Under Michigan law, a defendant must know a decedent's reputation for violence if he or she is going to use it to show he or she acted in self-defense.   *See People v. Harris*, 458 Mich. 310, 316 (1998).   Because the evidence Ms. Battris may have presented would have been inadmissible, the state court reasonably found counsel was not ineffective for failing to call her as a witness.

Next, Petitioner argues counsel was ineffective for failing to call Petitioner's cousin, Shaban Kejbou, to testify both about the victim's alleged "temper and aggressive attitude" and about an instance in which the victim allegedly stabbed a man with a knife.   Petitioner has not provided any evidence suggesting he was aware of the stabbing incident to which Mr. Kejbou allegedly would have testified.   Thus, the incident would very likely have been inadmissible under Michigan law. Moreover, Petitioner has not demonstrated that because of Mr. Kejbou's testimony about the victim's reputation, there is a reasonable probability the outcome of his trial would be different.   Accordingly, the Michigan Court of Appeals reasonably found counsel was not ineffective for failing to call Mr. Kejbou.

Finally, Petitioner argues that counsel should have called James Curry, Petitioner's employee, to testify that the victim intimidated customers at his store with knives and made statements about his skills with a knife and how he could kill someone with a knife. This claim was not presented to the state courts and is thus unexhausted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The Court may nevertheless deny relief with respect to the unexhausted claim if it can determine it lacks merit. 28 U.S.C. § 2254(b)(2). Here, as with the exhausted claims, Petitioner has not provided information to show he was aware of the incidents about which Mr. Curry may have testified. Because this evidence would have been inadmissible under Michigan law, counsel was not ineffective for failing to call Mr. Curry at trial.

Further, there was significant evidence presented at trial to negate Petitioner's self-defense claim and counsel called three witnesses – Petitioner and two of his brothers – to present the self-defense claim. Under Michigan law, for a defendant's acts to be considered lawful self-defense, the evidence must show: (1) the defendant honestly and reasonably believed that he or she was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual

16

penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Blanton v. Elo*, 186 F.3d 712, 713 n.1 (6th Cir. 1999) (citing *People v. Heflin*, 434 Mich. 482 (1990)); *Johnigan v. Elo*, 207 F. Supp. 2d 599, 608–09 (E.D. Mich. 2002) (citing *People v. Barker*, 437 Mich. 161, 165 (1991); *People v. K*emp, 202 Mich. App. 318, 322 (1993); *People v. Deason*, 148 Mich. App. 27, 31 (1985)). And a defendant is not entitled to use more force than necessary to defend himself. *Johnigan*, 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322). Thus, "a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death [or] serious bodily harm." *Id.* (internal citation omitted).

At trial, Petitioner and his brothers, Maher Zora and Hamid Zora, testified as to the events supporting Petitioner's self-defense claim. They testified that they went to the victim's house because Petitioner believed the victim had stolen $250,000 from him. And when they arrived, the victim became angry and asked Petitioner where his gun was. Further, all three testified that the victim went into the kitchen and came out with a two-headed knife or barbecue fork in his left hand

17

and a knife in his other hand, and charged at Petitioner while screaming an Iraqi or Arabic war cry. Finally, Petitioner and his two brothers testified that Petitioner shot the victim in self-defense.

Despite this testimony, there was substantial evidence introduced to show Petitioner did not act in self-defense. Rather, the evidence showed Petitioner was angry at the victim for allegedly stealing $250,000, and went to confront the victim with a weapon and his two brothers. Significantly, Dr. Daniel Spitz, the Macomb County Medical Examiner, testified that the victim was shot five times, including three times in the back. The victim was not standing when he was shot in the back, according to Dr. Spitz. And there were no injuries suggesting a struggle or evidence of close-range firing. (Tr. of Arg., 12–19, 52–53 (Sept. 18, 2009)). And there was no other evidence of a struggle with the victim; no blood was recovered from the knife or fork, and both utensils were found some distance from the victim's body. The fact that the victim was shot multiple times in the back, particularly when the victim was on the ground, undercuts Petitioner's self-defense claim. *See, e.g.*, *Cain v. Redman*, 947 F.2d 817, 822 (6th Cir. 1991).

18

Based on this evidence, a reasonable jury could find Petitioner intended to kill or harm the victim and did not act in self-defense, and that because Petitioner used excessive force. Further, the trial and appeals courts were justified in determining that Petitioner was not entitled to claim self-defense under Michigan law. *Cf. Sutton v. Bell*, 645 F.3d 752, 758 (6th Cir. 2011) (state court reasonably determined that petitioner was not prejudiced at capital murder trial by counsel's failure to object to prosecutor's improper comment because petitioner's self-defense theory failed as a matter of law). It is unlikely that counsel's "acts and omissions would have caused one to lose confidence in the jury's verdict." *Lewis v. Curtis*, 37 F. App'x 154, 159 (6th Cir. 2002). Thus, the state court reasonably found trial counsel was not ineffective for failing to interview or call these individuals to support Petitioner's self-defense claim. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### *Individuals Supporting Petitioner's Peaceful Character*

Petitioner also argues that trial counsel was ineffective for failing to call Mr. Kejbou and Petitioner's friend, Rafid Jajawie, to testify to Petitioner's character for peacefulness. Petitioner's claim was last

19

addressed by the trial court on his motion for post-conviction relief. (Dkt. 1-42.)  The trial court noted first that Petitioner did not offer any affidavits from them or ask them to testify at the *Ginther* hearing, and then held that counsel was not ineffective because Frank Polasky, Petitioner's friend, was called to testify and defense counsel "rebutted the People's witnesses who testified that the victim had a character for peacefulness." (*Id*. at 4–5.)

With his habeas petition, Petitioner has submitted affidavits from Mr. Kejbou and Mr. Jajawie.  However, they do not undermine the state court's findings.   First, Mr. Kejbou's affidavit does not mention Petitioner's peacefulness (Dkt. 1-24) and Mr. Jajawie's affidavit includes only one sentence as to Petitioner's nature.  (Dkt. 1-31.) Generally, "courts should decline second-guessing an attorney's trial strategy," including whether to call a witness." *Samatar v. Clarridge*, 225 F. App'x 366, 371 (6th Cir. 2007).  In this case, the affidavits do not adequately demonstrate that these men would have testified favorably regarding Petitioner's character, and given that trial counsel called a witness to testify as to Petitioner's character and cross-examined the prosecution's witnesses regarding the victim's character, Petitioner has

20

not demonstrated that the state court unreasonably rejected his Sixth Amendment claim. *See Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001) (affidavits insufficient to show deficient performance where petitioner alleged ineffective assistance of counsel for failure to call witnesses). Accordingly, Petitioner is not entitled to relief on this ground.

### *Individuals Supporting Petitioner's Factual Account of the Date of the Shooting*

Petitioner argues that counsel should have called a number of witnesses to testify about three specific facts: (1) the victim stole money from Petitioner; (2) the victim and Petitioner had arranged to go to the church on the day of the shooting to meet with a priest concerning the alleged theft of Petitioner's money; and (3) Petitioner intended to go to Detroit on January 23, 2009 to meet with the Liquor Control Commission at his brother Hamid's store and therefore was not in the city solely to confront the victim.

The Michigan Court of Appeals held that these facts were presented at trial through the testimony of Petitioner and his two brothers, and any testimony from the additional witnesses would have been cumulative. Thus, "there [was] no reasonable probability that the

21

outcome would have been different" with more testimony, and counsel was not ineffective. *People v. Zora*, 2011 WL 2623384, at *7.

As set forth above, whether to call a witness is trial strategy, and absent a showing of prejudice, a court should not second-guess the strategy. Here, even if these witnesses appeared at trial, a substantial amount of evidence related to the events and crime scene negated Petitioner's self-defense claim. *United States v. Foreman*, 323 F.3d 498, 504–05 (6th Cir. 2003) (dismissing ineffective assistance of counsel claim for failure to present additional witnesses where defendant testified as to facts that other witnesses would address and substantial evidence of guilt was admitted). Thus, Petitioner was not prejudiced by the absence of these witnesses, and the state court's determination that counsel was not ineffective was reasonable. Accordingly, Petitioner is not entitled to habeas relief on this ground.

### iii. Petitioner's Claim That Counsel Was Ineffective For Failing to Call A Self-Defense Expert

Petitioner also argues that trial counsel was ineffective for failing to call a self-defense expert to testify about the "21 foot rule," which was allegedly taught to defendant during firearms training and instructs a

22

person to shoot an attacker approaching an individual with a knife or other edged weapon if he or she is within twenty-one feet.

The Michigan Court of Appeals dismissed this claim, finding that Petitioner had "failed to make the necessary showing" that the proposed testimony would have assisted the trier of fact." *People v. Zora*, 2011 WL 2623384, at *6. Rather, Petitioner's self-defense claim was understandable to the jury without the assistance of an expert, and the testimony would not have been relevant to his self-defense claim. *Id.*

As aptly stated by the Michigan Court of Appeals, Petitioner has failed to show that an expert was necessary or that the testimony would have been relevant. And given the significant evidence presented suggesting Petitioner's guilt, it was reasonable for the state court to conclude Petitioner was not prejudiced and counsel was not ineffective. *See Reynolds v. Bagley*, 498 F.3d 549, 557–58 (6th Cir. 2007) (finding as reasonable a state court determination that counsel was not ineffective for failing to call an expert because petitioner suffered no prejudice). Accordingly, Petitioner is not entitled to habeas relief on this ground.

### iv. Petitioner's Claim That Counsel Was Ineffective For Agreeing to Evidentiary Stipulation

23

Finally, Petitioner argues that counsel was ineffective for stipulating that no fingerprints, DNA, or blood was found on the knife and fork that were recovered at the crime scene. Counsel was allegedly ineffective because a latent print was discovered on the fork and no testing for DNA or blood was conducted on either instrument. Petitioner also contends that trial counsel was ineffective for failing to present evidence of the latent print because this would have established that the victim had touched the fork and used it to attack him.

In rejecting this claim, the Michigan Court of Appeals noted the stipulation was accurate that the print found on the fork had "no latent prints of comparison value." *People v. Zora*, 2011 WL 2623384, at *2, 5. And, although the instruments were not tested for blood and DNA, there was no visible evidence of either substance on them. *Id.* at *5.

Because this same evidence would have been introduced by the prosecution through a lengthier – and perhaps more damaging – process without the stipulation at trial, Petitioner has not demonstrated he was prejudiced by counsel's decision to agree to the stipulation. *Burke v. United States*, 261 F. Supp. 2d 854, 862 (E.D. Mich. 2003).

Thus, the state court's determination that counsel was not ineffective is reasonable.

With respect to Petitioner's argument that trial counsel was ineffective for failing to introduce evidence of the latent print, as set forth above, there were no prints obtained from either instruments that could be compared to other individuals' prints.  Further, given the substantial amount of evidence admitted that inculpated Petitioner, the latent print would have been immaterial to his conviction.  Thus, he cannot demonstrate the outcome of the trial likely would have been different if the latent print were admitted.  Accordingly, Petitioner is not entitled to relief on this or his other ineffective assistance of counsel claims.

## C.    Prosecutorial Misconduct

Petitioner claims he was denied a fair trial because of prosecutorial misconduct.  First, the prosecutor allegedly knew Petitioner acted in self-defense, but presented false evidence by asking trial counsel to stipulate that no fingerprints, DNA, or blood evidence was recovered from the knife or barbecue fork.  And the prosecutor compounded this error by repeating this claim in his closing argument.

Second, the prosecutor allegedly told Petitioner's sister not to appear at trial because the prosecutor knew her testimony would exonerate Petitioner. Third, Petitioner claims the prosecutor misrepresented the evidence when he argued that Petitioner staged the crime scene, including by wiping clean the victim's weapons, so it looked as though he had been attacked. Fourth, the prosecutor falsely argued that Petitioner flipped the victim onto his stomach and then shot him in the back. Fifth, the prosecutor allegedly committed misconduct by arguing there was no evidence corroborating Petitioner's need to be in Detroit on the day of the shooting. Finally, the prosecutor allegedly submitted a false affidavit to the trial court regarding what was argued during opening and closing statements.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper conduct will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.*

26

*DeChristoforo*, 416 U.S. 637, 643 (1974)); *Parker v. Matthews*, ___U.S.___, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly* and *Darden* are the proper standard).

The Michigan Court of Appeals rejected each of these claims on their merits in a clear, reasoned opinion, which the Court will recite verbatim here.

> Defendant first argues that he is entitled to a new trial because the prosecutor knowingly presented "false and nonexistent" evidence through an erroneous stipulation that no fingerprints, DNA, or blood was found on a knife and fork that were recovered at the scene. Defendant contends that, although trial counsel agreed to the stipulation, it was false because a latent print was discovered on the fork, and no testing for DNA or blood was actually performed on either instrument.
>
> This Court reviews a trial court's decision on a motion for a new trial for an abuse of discretion. *People v. Cress*, 468 Mich. 678, 691; 664 NW2d 174 (2003). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v. Yost*, 278 Mich.App 341, 379; 749 NW2d 753 (2008). Further, "in order for prosecutorial misconduct to constitute constitutional error, the misconduct must have so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law." *People v. Blackmon*, 280 Mich.App 253, 269; 761 NW2d 172 (2008).

27

A prosecutor's knowing use of false evidence violates a defendant's right to due process. *Napue v. Illinois*, 360 U.S. 264, 269; 79 S Ct 1173; 3 L.Ed.2d 1217 (1959). To prevail under *Napue*, a defendant must show that (1) the evidence was actually false; (2) the prosecution knew that the evidence was actually false; and (3) that the false testimony was material. *Id.* at 271. "Material" means that there is a reasonable likelihood that the false evidence could have affected the verdict. See *People v. Herndon*, 246 Mich.App 371, 417–418; 633 NW2d 376 (2001).

As an initial matter, defendant's reliance on a police report statement by the victim's four-year-old son and a letter allegedly written by Manal Petros to support defendant's claim that the prosecutor knowingly presented false evidence, is misplaced because neither the letter nor the police report is part of the lower court record. It is impermissible for a party to enlarge the record on appeal. *People v. Williams*, 241 Mich.App 519, 524 n1; 616 NW2d 710 (2000); *see also People v. Seals*, 285 Mich.App 1, 20–21; 776 NW2d 314 (2009).

In any event, we agree with the trial court that defendant has not shown that the stipulation was actually false. The parties stipulated that no prints, DNA, or blood were found on the victim's knife or fork. It is undisputed that no fingerprints were found on the knife. With regard to the fork, a latent "lift" was recovered from the stainless steel portion of the fork near the tines. The forensic scientist and fingerprint expert reported, and later testified at a *Ginther* hearing, that the "latent lift" had "no latent prints of comparison value." She explained that a latent lift is not synonymous with an identifiable fingerprint, so the

28

statement that there were no fingerprints is accurate. Further, although there was no testing for blood or DNA on either the knife or the fork, there also is no evidence that either substance was on either instrument.

Furthermore, there is no reasonable likelihood that the stipulation affected the jury's verdict. The evidence shows that a latent, unusable lift was discovered on the stainless steel portion of the fork near the tines. The scenario described by the defense witnesses did not present circumstances where the victim's fingerprint would have been transferred to the tines of the fork. Rather, the defense witnesses testified that the victim held the fork by the handle in his palm, inside his closed fist. Defendant makes much of the fact that there was a latent, unusable lift on the fork, while ignoring other properly admitted evidence that rebuts his self-defense claim. The evidence indicates that defendant went to the victim's house unannounced, accompanied by his two brothers, because he believed that the victim had stolen $250,000 from him. Defendant instigated the confrontation at the victim's home, and brought a loaded weapon to the home. According to the defense witnesses, defendant was angry about the victim's theft, and the victim refused to go to the church to swear on a Bible that he had not taken the money. Defendant admitted shooting his gun toward the victim repeatedly. The autopsy revealed that the victim was shot five times, none at close range. Three shots were to the back, and two of the three gunshot wounds to the back occurred while the victim was down or close to the floor. There was no evidence of a struggle. Given the substantial evidence against defendant, to the extent the stipulation could be considered false, it was not material.

In a related claim, defendant also argues that the prosecutor impermissibly used the false stipulation during opening statement and closing argument. In opening statement, when listing certain "undisputed facts," the prosecutor stated that the fork and knife has "no evidentiary value," and "no fingerprints, no DNA, no blood as to anyone involved, possibly involved in this incident."

"The purpose of an opening statement is to tell the jury what the advocate proposes to show." *People v. Moss*, 70 Mich.App 18, 32; 245 NW2d 389 (1976). Viewed in context, the prosecutor's reference during opening statement was designed to show that he intended to prove during trial that there was no evidence on the fork and knife, and that defendant's self-defense claim was not credible. The statement was based on the stipulation, which was accurate; therefore, the prosecutor did not engage in misconduct by referring to it during opening statement and closing argument. In closing argument, the prosecutor was free to argue the evidence and all reasonable inferences arising from it as they related to his theory of the case. *See People v. Bahoda*, 448 Mich. 261, 282; 531 NW2d 659 (1995).

With regard to closing argument, defendant argues that the prosecutor impermissibly used the stipulation to falsely assert that the defense witnesses wiped the fork clean and staged the scene. We agree that the prosecutor's remark that the fork was clean was inaccurate because a latent lift was present. But the defendant bears the burden of showing actual prejudice, *People v. Pipes*, 475 Mich. 267, 274; 715 NW2d 290 (2006), and reversal is only warranted if the error

affected the outcome of the proceedings. *See Blackmon*, 280 Mich.App at 269.

Viewed in context, the prosecutor's remark did not cause defendant's conviction. The remark was focused on establishing the lack of evidence to support defendant's self-defense claim. While there was no evidence that the fork and knife had been wiped clean, it is true that the victim's prints were not on either instrument, and neither the fork nor the knife were found in close proximity to the victim's body. In addition, as previously indicated, there was evidence that defendant was angry because he believed that the victim had stolen a large amount of money from him, that he arrived at the victim's house unannounced and accompanied by his two brothers, that he was armed with a weapon, and that he shot the victim multiple times, including three times in the back. Moreover, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, and that the jury was to decide the case based only on the properly admitted evidence. These instructions were sufficient to dispel any possible prejudice. *People v. Long*, 246 Mich.App 582, 588; 633 NW2d 843 (2001). "It is well established that jurors are presumed to follow their instructions." *People v. Graves*, 458 Mich. 476, 486; 581 NW2d 229 (1998).

For these reasons, the trial court's decision to deny defendant's motion for a new trial based on the prosecutor's conduct, after first evaluating the accuracy of the stipulation and the prosecutor's comments, was a principled decision and, therefore, not an abuse of discretion.

*People v. Zora*, 2011 WL 2623384, at *1–4.

In renewing his arguments in this petition, Petitioner raises no new arguments, but disagrees with the state court's findings. "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing in prosecutorial misconduct cases is necessarily imprecise." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (internal quotation marks and alterations omitted). Because "the *Darden* standard is a very general one," courts have "more leeway . . . in reaching outcomes in case-by-case determinations." *Parker*, 132 S. Ct. at 2155 (internal quotation marks omitted).

Petitioner has not shown that anything in the record refutes the state court's description of what occurred at trial. And even considering the interview of Austin Matti and the letter from Manal Petros, he has failed to show the state court determination rejecting his prosecutorial misconduct claims was contrary to, or an unreasonable application of, clearly established law. First, as set forth above, Austin Matti's interview indicates that he did not witness the confrontation between Petitioner and the victim and therefore could not support Petitioner's claim of self-defense. Second, Ms. Petros' letter, sent to the trial judge

32

several months after Petitioner's trial does not state whether it was the prosecutor who advised her not to attend the trial. (*See* Dkt. 1-5.) Indeed, Petitioner's claim that the prosecutor told her to stay away is inconsistent with Ms. Petros' admission that the prosecutor subpoenaed her for trial. And, as set forth above, she did not witness the confrontation between her husband and Petitioner, and therefore could not support Petitioner's claim of self-defense. Thus, Petitioner has failed to demonstrate he was prejudiced by the prosecutor's conduct and that the state court determination was unreasonable.

Finally, even if the prosecutor submitted a misleading or incomplete affidavit to oppose Petitioner's state post-conviction relief motion, Petitioner has not demonstrated he was harmed by the affidavit. And, as set forth above, the state courts reviewed the transcripts of what was argued during opening and closing statements and found any misconduct not to have prejudiced Petitioner.

Accordingly, Petitioner is not entitled to habeas relief on his claims of prosecutorial misconduct.

**D.   *Brady* Violations**

Petitioner claims the prosecutor failed to disclose the forensic report with information about the latent print found on the barbecue fork, and this led defense counsel to erroneously agree to the stipulation. He also claims that the prosecutor wrongfully delayed the DNA testing of the victim's clothing and then withheld the result until after the trial. Finally, Petitioner alleges the prosecutor "concealed" the interview of Austin Matti and Petitioner's phone records that supposedly corroborated that he was in Detroit for meetings on the day the victim was killed there. (Dkt. 1-1 at 42.)

The Michigan Court of Appeals rejected the first of these claims on the merits.

> There is no indication that the prosecutor suppressed the forensic report. During post-trial proceedings, the prosecutor averred that the report would have been provided to the defense thorough discovery. Defense counsel acknowledged that it was possible that the forensic report was misplaced among the more than 200 pages of discovery provided to the defense. He also acknowledged that he knew from a police report that a latent print was found on the fork, and that the knife and fork were being tested. Thus, the defense was aware of the latent lift and the testing, and defendant could have followed through to obtain the report with reasonable diligence had he planned to review it. Indeed, trial counsel admitted that he did not consider the forensic report relevant to defendant's case. Moreover, given the substance

of the forensic report and the overwhelming evidence against defendant, the absence of the forensic report was not the difference between conviction and acquittal.

*People v. Zora*, 2011 WL 2623384, at *3.

A habeas petitioner bears the burden of showing the prosecution withheld exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012). Here, Petitioner has made only conclusory statements that the prosecutor concealed the forensic report. In fact, defense counsel admitted he may have received it but misplaced it. Thus, Petitioner has not demonstrated that the prosecutor concealed the report, and therefore failed to show that the state court determination rejecting his claim was contrary to, or an unreasonable application of, clearly established law.

Similarly, Petitioner has not provided any evidence to show the prosecutor withheld or delayed the DNA testing of the victim's clothes, the police report and interview of Austin Matti, or his cell phone records. Even if the prosecutor did withhold these documents, Petitioner has not demonstrated that the evidence provided would be exculpatory or material to his guilt. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (defendant must show that the state withheld exculpatory

35

evidence and that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 683 (1985).

The "cumulative effect of the [allegedly undisclosed] evidence" was not material to Petitioner's conviction. *See Kyles v. Whitley*, 514 U.S. 419, 440 (1995) (cumulative effect of evidence is the "touchstone" of assessing materiality of *Brady* violations). First, if the DNA report says, as Petitioner contends, there was blood on the clothing, it undermines his own testimony that the victim never stabbed or injured anyone. Thus, the report would not necessarily exculpate him, and if introduced at trial, it may have only damaged his credibility and his self-defense theory. Second, as set forth above, Austin Matti's interview would not exonerate Petitioner. Finally, the cell phone records may establish that Petitioner had a reason to be in Detroit, but they do not directly address the confrontation between Petitioner and the victim.

36

Thus, these three pieces of information, when viewed together, show there is not a reasonable probability they would undermine confidence in the guilty verdict – or even support Petitioner's self-defense claim – especially given the substantial amount of evidence admitted that suggested Petitioner's guilt.

Accordingly, Petitioner is not entitled to habeas relief on his *Brady* violation claims.

### E.   Jury Bias

Petitioner claims that the jurors were biased against him because he was Chaldean. Petitioner raised similar jury bias claims on direct appeal, but did not present this specific claim to the state courts. However, because the Court can determine the claim lacks merit, the Court will address the claim and deny relief.

To support his claim, Petitioner has presented the affidavit of Dale Barr, dated March 27, 2013. (Dkt. 1-16.) Mr. Barr served as an alternate juror during Petitioner's trial. He claims that during the trial, a seated juror commented, "[T]hose people can't control themselves even when they are in the courthouse." (*Id.* at 2.) The comment was allegedly made after the jurors witnessed a fight at the

37

courthouse between "some individuals who resembled people of Middle Eastern decent [*sic*]." (*Id.*)  Mr. Barr further claims, "From my experience with and among the jurors at Mr. Zora's trial, the jurors as a whole relied upon a discriminatory presumption against Mr. Zora that, because Mr. Zora is Chaldean/Middle Eastern and because of the money that Mr. Zora alleged was stolen from him, Mr. Zora must have made that money illegally and, therefore, must be guilty." (*Id.*)

Petitioner is not entitled to relief on this claim.  "[T]he partiality of a petit jury is evaluated in light of the persons who are ultimately empaneled and sworn, and not by those who are excused from service." *Dell v. Straub*, 194 F. Supp. 2d 629, 655 (E.D. Mich. 2002).   Here, the juror who allegedly commented about "those people" was removed for cause before the jury was empaneled and sworn. *See People v. Zora*, 2011 WL 2623384, at *7.  Thus, this potential juror's comments cannot be used to evaluate any bias of the jury that deliberated and convicted Petitioner. *Dell*, 194 F. Supp. 2d at 655.

Petitioner's remaining bias claim regarding the "jury as a whole" is unsupported.  First, "[b]ias in this context is 'actual bias,' or bias in fact," and a "petitioner must show that the jurors were actually biased

38

against him." *Holder v. Palmer*, 586 F.3d 328, 339 (6th Cir. 2009). Mr. Barr's affidavit provides no more than a conclusory statement about his belief that the jury was biased against Petitioner, and Petitioner has provided no additional information to support his claim. Second, Mr. Barr was an alternate juror and did not participate in deliberations, and his affidavit is therefore insufficient to establish the jury was biased against Petitioner. *See Mason v. Mitchell*, 320 F.3d 604, 637 (6th Cir. 2003). In sum, the record does not show Petitioner was denied a fair trial, s*ee id.*, and Petitioner is not entitled to relief on his jury bias claims.

## F.   Cumulative Error

Petitioner contends he is entitled to habeas relief because of cumulative error. The Sixth Circuit has held, however, that "not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Even if the Court did consider the alleged errors cumulatively, Petitioner's claim would fail because of the substantial amount of evidence of his guilt admitted at trial.

39

Accordingly, Petitioner is not entitled to habeas relief on the grounds of cumulative error.  *Id.*

## IV.   Petitioner's Motion for an Evidentiary Hearing

Petitioner has filed a motion for an evidentiary hearing.  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro*, 550 U.S. at 474.  But "a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit."  *Stanford v. Parker*, 266 F.3d 442, 459–60 (6th Cir. 2001) (citing *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994)).

As set forth above, Petitioner's claims lack merit, and he is therefore not entitled to an evidentiary hearing.  Petitioner's motion for an evidentiary hearing is denied.

## V.   Conclusion

The Court will deny the petition for writ of habeas corpus on its merits. And the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; s*ee also Strayhorn v. Booker*, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010). To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial after a district court has rejected a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated in this opinion, Petitioner has failed to make a substantial showing of the denial of his constitutional rights, and the Court will therefore deny Petitioner a certificate of appealability.

41

Accordingly, the petition for a writ of habeas corpus is DENIED

WITH PREJUDICE.  (Dkt. 1.)  The motion for an evidentiary hearing

(Dkt. 9) is DENIED.  A certificate of appealability is DENIED.

IT IS SO ORDERED.

Dated: January 10, 2017                s/Judith E. Levy
Ann Arbor, Michigan                    JUDITH E. LEVY
                                       United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's
ECF System to their respective email or First Class U.S. mail addresses
disclosed on the Notice of Electronic Filing on January 10, 2017.


                                       s/Felicia M. Moses
                                       FELICIA M. MOSES
                                       Case Manager

42